# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

RAYMOND ENGLE,

                    :

        Petitioner,                           Case No. 3:09-cv-451

                    :            District Judge Walter Herbert Rice

     -vs-                              Magistrate Judge Michael R. Merz

TERRY J. COLLINS,

                    :

        Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This habeas corpus case is before the Court for decision on the merits of the Petition and on Petitioner's Motion for Summary Judgment (Doc. No. 24). The Warden has filed a Response in Opposition to the Motion (Doc. No. 25) and an Answer/Return of Writ (Doc. No. 16) to which Petitioner has filed Objections (Doc. No. 17).

Petitioner pleads the following grounds for relief:

        **Ground One**:   Denial of Access to Court.

        **Supporting Facts:**  The record clearly shows Petitioner was too intoxicated to commit the acts alleged and that there exists a conspiracy to convict Petitioner by any means necessary.

        **Ground Two:**  Insufficient evidence, specific intent, voluntary intoxication and manifest miscarriage of justice.

        **Supporting Facts:**  The record fully reflects the Petitioner was too intoxicated to commit the alleged acts in the indictment and that state agents committed fraud and/or perjury to convict the Petitioner.

1

**Ground Three:**  The showup identification and photospread were suggestive and unfairly prejudicial.

**Supporting Facts:**  The record admits that Detective Olinger alters evidence to make other evidence appear the same, and that the mandates of the United States Supreme Court were violated to preserve and present said evidence, and/or pressure Petitioner to plea [sic] guilty – dupe the jury.

**Ground Four:**  The trial court violated its jurisdiction when sentencing Petitioner.

**Supporting Facts:**  Petitioner's indictment did not give the Petitioner notice of the enhacement [sic] elements the court imposed upon the Petitioner and/or the legislators had not enacted the law the trial court imposed upon the Petitioner.

**Ground Five:**  Ineffective Assistance of Appellate Counsel.

**Supporting Facts**:  Did not confer with Petitioner when filing brief.  Did not intergrate [sic] supplemental *pro se* brief into his brief.  Failed to argue constitutional issues that would have ended this cause of action.

(Petition, Doc. No. 2, PageID 45-52.)

**Present Procedural Posture in this Court**

The Petition was filed November 25, 2009.  Engle accompanied his Petition with motions for preliminary injunctive relief and mandamus (Doc. No. 3).  Magistrate Judge Ovington recommended that those motions be denied and that the case be stayed to permit Engle to exhaust available state court remedies (Doc. No. 5).  Judge Rice adopted that Report over Engle's Objections and stayed the case March 31, 2010 (Decision and Entry, Doc. No. 7).  Engle appealed, but his appeal was dismissed for want of prosecution July 28, 2010 (Doc. No. 11).

2

Almost two years later on May 3, 2012, Engle moved to reinstate, advising the Court that he had completed exhaustion (Doc. No. 12). Magistrate Judge Ovington ordered the Warden to respond to that Motion (Doc. No. 13) which the Attorney General's Office interpreted as requiring him to show cause why the writ should not issue (See text of Respondent's Motion for An Extension of Time, Doc. No. 15; see also Return of Writ, Doc. No. 16, PageID 171 expressly interpreting Magistrate Judge Ovington's Order as an order to show cause). Thereafter the Warden filed his Answer/Return of Writ (Doc. No. 16).

Although Engle captioned his Motion to Reinstate as being made under Ohio R. Civ. P. 60(A), the Court accords that motion the liberal reading to which *pro se* litigants are entitled and treats it as a motion to vacate the stay of proceedings; that is the relief actually requested in the Motion (Doc. No. 12, PageID 151). Because no judgment was entered at the time of the stay, it was not necessary to refer the Motion for Reinstatement under 28 U.S.C. § 636(b)(3) for a report and recommendations as was done (Doc. No. 14). Construed as a motion to vacate the stay, it is within the decisional authority of a Magistrate Judge. Because it is unopposed by the Warden and Engle has apparently exhausted available state court remedies, the Motion is granted. As Mr. Engle requested in the Motion, the case may now "proceed to conclusion." (Doc. No. 12, PageID 151).

Engle responded to the Return of Writ with Objections rather than a traverse (Doc. No. 17). He asked the Court to stay the case yet again "until this court can address the jurisdictional issues within; and, whether or not the respondent has in the spirit of swift justice answered this Court's Order for the respondent to show cause via denying Defendant full and complete discovery." *Id.* at PageID 839.

The Magistrate Judge finds no colorable jurisdictional issues raised in the Objection. Engle was indicted by a Montgomery County Grand Jury for two felony offenses which allegedly occurred in Montgomery County. The Montgomery County Common Pleas Court unquestionably has jurisdiction over indictments for felony offenses assertedly committed in Montgomery County. This is precisely what the Second District Court of Appeals held on Engle's second direct appeal. *State v. Engle*, 2010-Ohio-2636, ¶ 4, 2010 Ohio App. LEXIS 2193 (Ohio App. 2nd Dist. June 11, 2010). On this question of state law, this Court is bound by the state appellate court's decision. *Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003).

The second basis on which Engle requested an additional stay was that Respondent had somehow denied him "full and complete discovery." (Doc. No. 17, PageID 839.) In its Decision and Order of October 2, 2012 (Doc. No. 27), the Court determined that Petitioner had not satisfied the standards of Habeas Rule 6 for obtaining discovery. That is also not a basis for granting a further stay of proceedings.

Finally, Engle has filed a motion for summary judgment contending that there are no genuine issues of material fact and that he is entitled to a judgment of acquittal on the charges against him (Doc. No. 24, PageID 910). The substance of that Motion is dealt with hereinafter.

### Procedural History in the State Courts

In April 2007 Engle was indicted by a Montgomery County Grand Jury on one count of burglary and one count of gross sexual imposition (Return of Writ ("ROW"), Doc. No. 16, PageID 188-189). After pleading not guilty, Engle exercised his right under *Faretta v. California,* 422

U.S. 806, 835 (1975), to represent himself in all further proceedings.   After trial to a jury he was found guilty on both counts and sentenced by Judge John W. Kessler to eight years imprisonment for the burglary and a consecutive one and one-half years imprisonment for the gross sexual imposition.   The gross sexual imposition conviction made Engle a sexually oriented offender and Judge Kessler notified him that, as of January 1, 2008, he would be a Tier 1 sex offender/child victim offender with corresponding registration requirements (Termination Entry, Sept. 17, 2007, ROW Ex. 9, PageID 207).

Engle, now represented by counsel, appealed to the Second District Court of Appeals, pleading four assignments of error.   On April 17, 2009, the court of appeals sustained Engle's claim that his waiver of right to counsel was insufficient.   *State v. Engle*, 183 Ohio App. 3d 488 (Ohio App. 2nd Dist. Apr. 17, 2009), relying on *Von Moltke v. Gillies*, 332 U.S. 708 (1948).   The other assignments of error were found to be moot.   The judgment of conviction was reversed and the case remanded "for further proceedings consistent with this Opinion."   *Engle*, 183 Ohio App. 3d at ¶ 69.

Unsatisfied with a complete reversal, Engle appealed to the Ohio Supreme Court claiming constitutional entitlement to a ruling on the other assignments of error.   The Ohio Supreme Court declined jurisdiction.

On remand, Engle entered into a plea agreement with the State under which he pled no contest to the burglary charge and the gross sexual imposition charge was dismissed (Plea Agreement, ROW, Doc. No. 16, Ex. 23, PageID 382-383).   Judge Mary Wiseman sentenced Engle to time served on the burglary charge, but he remained under post-release control.   The Termination Entry contains no language regarding sexual offender classification.   *Id.* Ex. 23,

5

PageID 384-385.

Not satisfied with the plea agreement he had just entered into, Engle appealed again. His appointed counsel filed an *Anders* brief. Finding no error, the court of appeals affirmed. *State v. Engle*, 2010-Ohio-2636, 2010 Ohio App. LEXIS 2193 (Ohio App. 2nd Dist. June 11, 2010). Engle appealed, but the Ohio Supreme Court again declined to exercise jurisdiction. *State v. Engle,* 126 Ohio St. 3d 1585 (2010).

**Analysis**

**Possible Affirmative Defenses**

The States concedes that the Petition was timely filed within the time allowed by 28 U.S.C. § 2244 and is thus not barred by the statute of limitations.

Likewise the State concedes this Court has jurisdiction because the required custody existed at the time the Petition was filed – Petitioner was then still on post release control. His subsequent completion of post release control, if that has indeed occurred, does not render the Petition moot. *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968).

The State concedes that Engle has exhausted available state court remedies.

The States further concedes that all claims in Grounds Two, Three, Four, and Five and the insufficiency of evidence claim in Ground One were fairly presented to the state courts and therefore are not procedurally defaulted (ROW, Doc. No. 16, PageID 174). However, the Warden asserts the balance of Ground One ("that there exists a conspiracy to convict Petitioner by

any means necessary") is procedurally defaulted because it was never presented to the state courts for their consideration. *Id.*

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848

(1999)(citations omitted).   "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006), *quoting O'Sullivan v. Boerchel,* 526 U.S. 838, 846-47 (1999).

In the face of Respondent's assertion that this claim was never presented to the state courts, Petitioner points to no evidence of record to the contrary.   Therefore the claim that Engle has been convicted pursuant to a conspiracy to convict him by any means necessary is procedurally defaulted and should be dismissed with prejudice.

## Grounds One and Two:   Sufficiency of the Evidence

Under the Fourteenth Amendment, a person may not be convicted on insufficient evidence.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .   This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).   This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).   Of course, it is state law which determines the elements of offenses;   but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.   *In re Winship, supra.*

In order to demonstrate that there is insufficient evidence for a conviction, Engle continuously cites a statement by prosecutor John C. Amos on July 24, 2007, that "[w]hen the ability of the other person to resist is substantially impaired because of a physical state or condition" and calls this a "judicial admission" that Engle was too intoxicated to form the criminal intent to commit the offenses of burglary and gross sexual imposition.  In fact, Mr. Amos is discussing the impairment of the victim.

The quoted language is from the prosecutor's closing argument when he is going through the elements of gross sexual imposition.   The argument being made by Mr. Amos is as follows:

> Let's go to the next charge. It's a little more detailed. I'm going to go over these a little quicker because some of them we've already talked about.
>
> Again, we have to prove the same elements for this in terms of the date, location. Okay? We've been through that.   We know that this occurred in her apartment.
>
> Defendant "did have sexual contact, with another, not his spouse." Well, we know, again talking and listening to the evidence, that she was fondled and groped in her breast area and really all over her upper body's what she said, but her breast area is what we're talking about here. We know that the individual [that] did this was: not her spouse. She's not married and she told us --and this goes back to identity, we'll talk about that -- she does not know this defendant. Does not know him. Never seen him. Does not know him. That's crucial. Okay? I want you to remember that.
>
> "When the ability of the other person to resist is substantially impaired because of a physical state or condition." She was asleep. The state of being asleep, under the law, and not argued to you, substantially impairs someone' s ability to resist or consent. And again, that may be common sense to most of us, but again it's an element. She was asleep when this happened.
>
> I submit to you she was probably in one of the more vulnerable states that we are in when we're sleeping. And that's an element we had to prove. But you know that she was asleep when this happened.

9

She woke up during the occurrence of it.

"And the offender knew or had reasonable cause to believe that the ability ... " -- and this goes again to the same evidence – "the ability to resist or consent is substantially impaired." The key here is "reasonable cause to believe." We can't get inside of the head of a defendant so you use your common sense to figure out. Okay.

He's coming in her apartment at night-- at 2:30a.m. –when she's asleep. He has reasonable cause to believe that she's not going to be in a condition or a state to consent when she's asleep. Again, common sense. But again, it's an element we had to prove to you.

"With purpose of sexually arousing or gratifying himself or the victim," Okay. Again, same thing. However, I submit to you that without getting inside his head, we know from the words that he spoke to Cinda Miller when he broke in her apartment, what his intention was. We know from her testimony, because she told us and she told the same thing to the officers and she told the same thing to Detective Olinger about what he said.

(Trial Tr., pp. 227-229, ROW, Doc. No. 16,   PageID 779-781.)

This argument has absolutely nothing to do with Mr. Engle's being impaired.   Rather, Mr. Amos is arguing that Ms. Miller was "substantially impaired" in her ability to give or refuse consent to sexual contact because she was asleep.   Substantial impairment of the victim is an element of the crime of gross sexual imposition.   To establish the crime as it was charged in this case, the State had to prove that Engle had sexual contact with Cinda Miller, who was not his spouse when:

The ability of the other person to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

Ohio Revised Code § 2907.05(A)(5).   It is perfectly clear from context that what Mr. Amos is

10

doing is arguing that Ms. Miller, the victim, was substantially impaired in her ability to consent or resist by the fact that she was asleep.

In his argument, Mr. Amos states in language repeatedly misquoted by Mr. Engle, "[t]he state of being asleep, under the law, and not argued to you, substantially impairs someone's ability to resist or consent."   This argument could be correctly re-stated as "[t]he ability of someone to resist or consent to sexual contact is, as a matter of law, substantially impaired when they are asleep.   We don't have to prove that to you.   If she was asleep, the law provides that her ability to consent or resist was substantially impaired."

Of course, at this stage of the proceedings, argument about the gross sexual imposition conviction is beside the point because that conviction was vacated by the court of appeals and that charge was dismissed with prejudice on remand by the Montgomery County Common Pleas Court.   Engle expresses outrage that he was ever convicted of that offense, calling it libelous.   He seems to want this Court to erase the proceedings against him on this charge.   But he is not in custody on a conviction for gross sexual imposition and a habeas corpus court has jurisdiction only with respect to convictions on which a person is in custody.   *Maleng v. Cook*, 490 U.S. 488 (1989).

Engle complains that he was classified as a sexual offender by virtue of that conviction and worries that his reputation and ability to find employment even with his new college degree will be adversely affected by having this classification.   But the sexual offender classification was wiped out by the vacation of his gross sexual imposition conviction by the court of appeals and so far as this Court is able to determine, he is not listed as a sexual offender on the websites for that purpose of the Montgomery County Sheriff, the Ohio Attorney General, or the United States Department of

Justice.

Aside from the gross sexual imposition charge, Engle may be arguing that he was too intoxicated to be convicted of the burglary.   Voluntary intoxication was an affirmative defense to specific intent crimes in Ohio prior to October 2000 when Ohio eliminated voluntary intoxication as a defense to specific intent.   *Smith v. Bradshaw*, 591 F.3d 517, at n. 2,(6th Cir. 2010), *citing* Ohio Rev. Code § 2901.21(C).   Even if voluntary intoxication had still been a defense in 2007 or 2009, Engle points to no place in the record which proves he was too intoxicated to commit a burglary.

Even if there were record evidence of Engle's intoxication, it would not support vacating the burglary conviction because he pled no contest to that charge.   A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt.   *Menna v. New York,* 423 U.S. 61 (1975).   A guilty or no contest plea constitutes a break in the chain of events leading up to it.   *Tollett v. Henderson*, 411 U.S. 258 (1973).   Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity."   *Tollett*, 411 U.S. at 266.   A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him.   *McMann v. Richardson*, 397 U.S. 759 (1970); *McCarthy*, 394 U.S. at 466.   In other words, by pleading no contest, Engle gave up the right to assert, either in the Ohio courts or on habeas, that there was so much evidence of his intoxication that he could not have been found guilty by any rational juror.

Grounds One and Two should therefore be dismissed with prejudice.

### Ground Three:   Showup Identification and Photospread

In Ground Three Petitioner claims the showup identification and photospread were suggestive and unfairly prejudicial.   Respondent concedes that this Ground for Relief is preserved for merit review by Engle's no contest plea (ROW, Doc. No. 16, PageID 179).   However, Engle includes no discussion or argument on this claim anywhere in his Objections.

This issue was raised on appeal from the burglary conviction on the no contest plea.   The court of appeals decided the issue as follows:

> Counsel notes that appellant disputes "the propriety of the trial court's denial of his Motion to Suppress without holding a hearing as requested." The defendant pro se filed a "Motion to Suppress Evidence" on May 28, 2009, together with three separate motions to dismiss, a motion for return of property, a motion for "severance of charges," a motion for discovery, a motion for "own recognizance," and a "written request for witnesses and documents." On June 19, the court denied the motions (except for ordering compliance with the local rules and the criminal rules), but specifically held that the court "will entertain and consider any issues raised by defendant's appointed counsel."   A plea and sentencing agreement was negotiated and counsel did not file such motions.
>
> In order to satisfy the specific requirements of Crim.R. 47, a motion to suppress evidence must state the legal and factual basis upon which it rests with sufficient particularity to put the prosecutor and the trial court on notice of the issues to be decided. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, as cited in *State v. Butt* (Aug. 29, 1997), Montgomery App. No. 16215, 1997 Ohio App. LEXIS 4141. The appellant, pro se, summarily asked to suppress "(1) alleged confession; (2) one-on-one identification; and (3) any all pictures taken in the case *sub judice*." This does not comply with Wallace and the motion was properly overruled.
>
> Moreover, a pro se motion to suppress need not even be considered by the court. A criminal defendant has the right to either appear pro

13

> se or by counsel, but has no corresponding right to act as co-counsel on his own behalf. *State v. Martin*, 103 Ohio St.3d 385, 2004 Ohio 5471, 816 N.E.2d 227. Therefore, the trial court had no obligation to consider the motion. See, e.g., *State v. Pilgrim,* 184 Ohio App.3d 675, 2009 Ohio 5357, at P59, 922 N.E.2d 248.

*State v. Engle*, 2010-Ohio-2636, ¶¶ 7-92010 Ohio App. LEXIS 2193 (Ohio App. 2nd Dist. June 11, 2010).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Petitioner has not demonstrated any way in which this decision of the court of appeals is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.   Therefore Ground Three should be dismissed with prejudice.

### Ground Four:   Sentencing Enhancements

In his Fourth Ground for Relief, Engle complains of sentencing enhancements imposed on him by Judge Kessler.  The Respondent reads this claim as directed to the imposition of consecutive sentences for allied offenses of similar import.  The Magistrate Judge reads the Petition instead to be complaining of Judge Kessler's imposition of a sexual offender classification and application to Engle in September, 2007, of new legislation which did not become effective

14

until January, 2008.

Regardless of which of these interpretations is correct, Ground Four is moot.   The gross sexual imposition charge has been dismissed with prejudice so that Engle was sentenced on only one charge of burglary and that charge does not carry any sexual offender classification.   Ground Four should be dismissed with prejudice.


### Ground Five:   Ineffective Assistance of Appellate Counsel


In his Fifth Ground for Relief, Engle claims ineffective assistance of appellate counsel, raising three sub-claims:   (1) failure to confer with Engle before filing the brief, (2) not including issues from Engle's *pro se* brief in the brief counsel filed, and (3) not arguing constitutional issues that "would have ended this cause of action."   The State concedes this Ground for Relief is preserved for merit review although Engle never filed an application to reopen the appeal under Ohio R. App. P. 26(B), which is the standard Ohio method for litigating these claims.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components.   First, the defendant must show that counsel's
> performance was deficient.   This requires showing that counsel

> was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.   Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.   In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.   *Berghuis v. Thompkins,* ___ U.S. ___, ___, 130 S.Ct. 2250, 2255 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;   that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing, *Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing, *Strickland, supra*; *Blackburn v.*

16

*Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987) *quoting*, *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S.Ct. 1760 (2012), *quoting Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 792 (2011).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).   To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.*   If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant.   *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).

Engle makes no argument about this Ground for Relief in his Objections to the Return of

Writ, so the Court must analyze the claims based on the Petition alone.

With respect to the first sub-claim, appellate counsel should indeed confer with their clients before filing an appeal brief.  If appellate counsel in this case did not do so, as Engle alleges, then the Court must turn to the question of prejudice.  Engle has made no demonstration of prejudice.  That is, he has not shown that there is a reasonable probability the appeal would have turned out differently had counsel conferred with him.  That seems very unlikely, since counsel obtained a vacation of the convictions.  It is apparently Engle's contention that counsel could have made even stronger arguments which would have resulted in an outright acquittal. Those arguments are presumably the ones adverted to in the second and third sub-claims, to which the Court now turns.

In the second sub-claim, Engle asserts his counsel should have included in counsel's brief the issues raised in Engle's *pro se* supplemental brief.  In the third sub-claim, he asserts there were constitutional issues which would have resulted in an outright acquittal.[1]

The assignments of error which Engle attempted to add by his *pro se* brief are as follows:

> Ohio constitutional right to a grand jury indictment; Section 10, Article 1, Ohio Constitution and federal constitutional rights to due process; Fifth and Fourteenth Amendments to the United States Constitution were violated when the defendant's indictment omitted the element of *mens rea* of the offenses.

> Vindictive prosecution; improper comments; and a failure to give full and fair consideration to the facts denied the defendant his First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

> The trial court's failure to be impartial denied the defendant of his First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

---

1 The only such issues of which Engle has advised this Court are those in his tendered *pro se* supplemental brief.

18

(ROW, Doc. No. 16, Ex. 13, PageID 249-250.)

With regard to the first of these proposed assignments, Engle relies principally on *State v. Colon*, 118 Ohio St. 3d 26, 885 N.E. 2d 917 (2008)("Colon I").   In *Colon I* the Ohio Supreme Court held that omission of an essential element from an indictment is a structural error not subject to harmless error analysis, but never suggested that this deprived the common pleas court of jurisdiction. *Colon I* was decided April 9, 2008.   Mr. Engle filed his motion for leave to file a supplemental *pro se* brief on July 20, 2008 (See PageID 241) On motion for reconsideration, the Ohio Supreme Court held *Colon I* is prospective only in its application and the syllabus in *Colon I* is confined to the facts of that case. *State v. Colon*, 119 Ohio St. 3d 204 (2008)(*Colon II*).   *Colon II* was decided July 31, 2008, well before the court of appeals decided Engle's first direct appeal on April 19, 2009.   Thus the first proposed assignment of error would not have been successful and Engle suffered no prejudice from his counsel's failure to include it.

Petitioner's argument in support of his vindictive prosecution claim is confusing. It contains a number of constitutional claims, including that the prosecutor misconstrued the evidence in his argument to the jury, that the initial showup was prejudicial, that the State's case depended entirely on the victim's testimony, that the prosecutor refused to allow Petitioner to question the victim "on prior knowledge of our relationship," and so forth.   None of these arguments support a claim of prosecutorial vindictiveness.   To extent any of them could be construed as claims of prosecutorial misconduct, Engle would have to show that he made a contemporaneous objection to them, or they would be deemed waived.   Even if a contemporaneous objection was made, the asserted instance of prosecutorial misconduct do not add up to a sufficient quantum to result in an appellate declaration that the trial was unfair.

19

Finally, Engle claims Judge Kessler was not impartial because he allegedly (1) ignored the circumstances of Engle's arrest; (2) ignored the prosecutor's and Detective Olinger's admission that Engle's statement was not a confession; (3) "ignored the prosecutor's admission that substantially impair because of a physical state or condition was not argued"; (4) admitted he denied Engle's right to compulsory process; (5) refused Engle the right to give jury instructions; (6) gave jury instructions which were plainly erroneous; (6) ignored the admission of allied offenses in the indictment; (7) hindered the direct appeal; and (8) violated the constitutional ban on *ex post facto* legislation.   These are claims of trial judge error.   Even assuming Judge Kessler did all the things Engle alleges and all of them were erroneous, that would not support a finding of judicial bias.   And Engle makes no showing that he attempted to remedy the asserted bias by applying to the Chief Justice of Ohio for Judge Kessler's disqualification.

None of the assignments of error Engle wanted to add by his *pro se* brief was sufficiently strong, if it had merit at all, to be reasonably likely to obtain an outright acquittal.   Therefore Engle's Fifth Ground for Relief should be dismissed with prejudice.

## Petitioner's Motion for Summary Judgment

Petitioner purports to bring his Motion for Summary Judgment under Fed. R. Civ. P. 56 and 59.   The District Courts have discretion to apply the Federal Rules of Civil Procedure to habeas corpus cases to the extent they are not inconsistent with statutory law or the Rules Governing § 2254 Cases and this Court has previously allowed the application of both of these civil rules in habeas cases.   However, Fed. R. Civ. P. 59 is not applicable at this stage of the case

20

because it applies only to amendment or vacation of federal judgments and there is no judgment in this case as yet. The Court will therefore analyze the Motion only under Fed. R. Civ. P. 56.

At the outset of his Motion for Summary Judgment, Engle "pleas with this Court to enter a judgment of Acquittal for the Petitioner." (Motion, Doc. No. 24, citing Civil Rule 50.) Fed. R. Civ. P. 50 is not applicable in a federal habeas corpus case so as to allow the federal court to enter a judgment of acquittal in the state court case being reviewed. A federal habeas court does not have authority in any event to enter a judgment of acquittal. Its authority is limited to issuing a conditional writ, which allows the State to correct constitutional errors which infect the judgment, or an absolute writ, which essentially nullifies the authority of the State to continue to confine a petitioner on the prior judgment. An absolute writ acts like a dismissal without prejudice of the judgment of conviction, but it is not a judgment of acquittal.

Substantively, Mr. Engle's summary judgment motion adverts again to the prosecutor's statement in closing about the victim's "substantially impaired" status. (Motion, Doc. No. 24, PageID 914.) He then again argues against Judge Kessler's applying the January 2008 law to his case in September 2007. *Id.* at PageID 915-918. He complains that the indictment was libelous. *Id.* at PageID 918-919. He argues he was sentenced consecutively for allied offenses of similar import. *Id.* at PageID 920-921. He complains that somehow his right to privacy was infringed. *Id.* at 921-926. He complains that Judge Wiseman on remand was without jurisdiction to retry him because of the Double Jeopardy Clause. *Id.* at 926-927. He asserts a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at 927.

These arguments do not show Mr. Engle is entitled to summary judgment. As noted above, the "substantially impaired" argument was directed to the victim's condition. Judge

21

Kessler's application of the 2008 statute is irrelevant because the gross sexual imposition conviction was vacated and then the charge was dismissed with prejudice. No liability for libelous charges made in a grand jury indictment can be imposed in a habeas corpus case and the fact that such charges were libelous would not support granting habeas relief if a jury later found guilt beyond a reasonable doubt, as the jury did in this case. The allied offenses claim is moot because Engle was eventually sentenced only for the burglary. The Double Jeopardy claim is without merit for the reasons given by the Second District Court of Appeals on the second direct appeal: vacation of a judgment on appeal leave the parties in the same position as they were before trial. Finally, Engle has not shown what exculpatory evidence was concealed by the State before trial.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would not be taken in good faith.

October 4, 2012.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.   Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.   A party may respond to another party's objections within fourteen days after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).